ELECTRONIC CITATION:  2009 FED App. 0004P (6th Cir.)
File Name:  09b0004p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  NASHVILLE SENIOR LIVING, LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| OFFICIAL COMMITTEES OF UNSECURED CREDITORS, | ) | |
| | ) | No. 08-8087, consolidated with related appeals nos. 08-8089, 08-8090, 08-8091, 08-8092, 08-8093, 08-8094, 08-8095 |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDERSON SENIOR LIVING PROPERTY, LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | | |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee, at Nashville.
No. 08-07254.

Decided and Filed:  June 11, 2009

Before:  FULTON, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

## OPINION
_____

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge.  The Official Committees of Unsecured Creditors ("Committee"), comprised solely of the non-debtor co-owners of the

Properties (defined herein), appeal an order of the bankruptcy court granting the Debtors[1] authority to sell the Properties held in a tenancy in common between the Debtors and the co-owners pursuant to 11 U.S.C. § 363(b) and (h). The Committee sought a stay of the order from both the bankruptcy court and this Panel. Those requests were denied, and the sale of the Properties has closed. The good faith of the purchaser has not been challenged.

Because the bankruptcy court's order was not stayed and the sale has closed, the Debtors seek dismissal of the appeal pursuant to 11 U.S.C. § 363(m). The Committee argues that § 363(m) should not apply to the aspect of the order that authorized the sale of the co-owners' interest under § 363(h). For the reasons set forth below, we conclude that the appeal is moot pursuant to § 363(m).

## I. ISSUE ON APPEAL

The issue that would be raised in this appeal is whether the bankruptcy court erred when it granted the Debtors' motion to sell to a third party, pursuant to 11 U.S.C. § 363(b), (f) and (h), property held by the Debtors and the co-owners as tenants in common. Because we conclude that the appeal is moot, we do not reach the merits of this issue.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Bankruptcy Appellate Panel of the Sixth Circuit and no party has elected to have the appeal heard by the district court. A final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the

---

[1] The debtors in these chapter 11 cases, which are being jointly administered by the bankruptcy court under Case No. 08-07254, are Nashville Senior Living, LLC, Anderson Senior Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC, Winston-Salem Oakdale Property, LLC, Briarwood Retirement and Assisted Living Community, LLC, and Century Fields Retirement and Assisted Living Community, LLC. The Properties at issue in this appeal were owned, in part, by only seven (7) of the eleven (11) debtors. Those seven debtors are Anderson Living Property, LLC, Charlotte Oakdale Property, LLC, Greensboro Oakdale Property, LLC, Mt. Pleasant Oakdale I Property, LLC, Mt. Pleasant Oakdale II Property, LLC, Pinehurst Oakdale Property, LLC and Winston-Salem Oakdale Property, LLC. Throughout this opinion, these debtors are collectively referred to as the "Debtors."

judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order approving a sale is a final order. *Sugarloaf Ind. & Marketing Co., LLC v. Quaker City Castings, Inc. (In re Quaker City Castings, Inc.)*, 337 B.R. 729, 2005 WL 3078607, *1 (B.A.P. 6th Cir. 2005) (unpublished table decision) (citing *In re Sax*, 796 F.2d 994, 996 (7th Cir. 1986)).

## III.   FACTS

Prior to filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, each of the Debtors owned a parcel of real property improved with a facility for the elderly. Four of those properties were located in North Carolina and three others were located in South Carolina (collectively the "Properties"). The Debtors acquired the Properties in conjunction with a December 2006 transaction pursuant to which tenancy in common interests in the Properties were sold to investors. A group of approximately thirty investors (the tenants in common, or "TIC") purchased tenant in common interests in the Properties pursuant to the December 2006 transaction reflected in the Tenants in Common Agreement (the "TIC Agreement"). See Exhibit A to TIC's objection to motion to dismiss. Under the TIC Agreement, the TIC had various rights, including the right to partition the Properties and to require unanimous approval of any sale, transfer, or exchange of the Properties. The Debtors own approximately a 60% undivided interest in the Properties and the TIC own 40%.

In conjunction with the TIC Agreement, the TIC signed a Debt Assumption and Indemnification Agreement pursuant to which the TIC obligated themselves to Merrill Lynch Capital, apparently the predecessor in interest to GE Business Financial Services, Inc. ("GE"), for a specified portion of the debt and agreed that their fee interest was subordinate to GE. The Debtors defaulted on their payment obligations to GE, and GE accelerated the loan. In July 2008, GE commenced foreclosure proceedings.[2] (Bankr. Ct. Docket #266).

---

[2] In an attempt to stop GE's foreclosure action against the TIC's interests in the Properties, the TIC filed a complaint with the bankruptcy court seeking an injunction and alleging that "[a] foreclosure sale of the TIC Interests of the TIC Owners separate and apart from the ... interests of the ... Debtors would cause irreparable harm to the bankruptcy estates." (Bankruptcy Ct. Docket # 266.)

On August 17, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. After filing their petitions for relief, the Debtors sought authority pursuant to 11 U.S.C. § 363 to sell the Properties to the highest and best bidder. Following the marketing of the Properties by the Debtors' broker, Five Star Quality Care, Inc. ("Five Star") eventually emerged as the highest and best bidder. The Debtors and Five Star entered into an agreement regarding the sale of the Properties. On October 10, 2008, the Debtors filed a motion seeking approval of bidding procedures for the sale of the Properties, recognition of Five Star as the "stalking horse," and authority to sell the Properties pursuant to 11 U.S.C. § 363(b) to the highest and best bidder (the "Sale Motion"). The Committee opposed the Sale Motion. The Debtors also filed adversary proceedings against the TIC in which Debtors sought permission to sell the TIC's interest in the Properties pursuant to § 363(h). The Debtors filed motions for summary judgment in each of those proceedings, and the TIC opposed those motions.

On October 21, 2008, the bankruptcy court held a hearing at which it approved the proposed sale procedures over the objections of the Committee and set November 12, 2008 as the date for the hearing on the approval of the sale of the Properties to the highest and best bidder. At the conclusion of the sale hearing, the court approved the sale of the Properties to Five Star. On November 20, 2008, the court issued an order approving the sale based on, *inter alia*, a finding that the Debtors had satisfied the requirements of § 363(h) (the "Sale Order"). The court entered orders granting the Debtors' motions for summary judgment in the adversary proceedings on November 24, 2008.

On November 20, 2008, the Committee filed a notice of appeal of the Sale Order and an Expedited Motion for Stay Pending Appeal with the bankruptcy court. The Committee also filed notices of appeal in the adversary proceedings on November 25, 2008,[3] and again requested that the bankruptcy court stay the sale pending appeal. On November 25, 2008, the bankruptcy court denied the Committee's motions for stay pending appeal. On December 2, 2008, the bankruptcy court denied the Committee's motion for stay pending appeal in the adversary proceedings.

---

[3] These related appeals were assigned BAP Case No. 08-8089 through 08-8095. The Panel has determined to consolidate the related appeals with the above-captioned appeal.

On December 3, 2008, the Committee filed an "Emergency Motion for Stay Pending Appeal" before this Panel.[4] The Debtors filed a response in opposition on the afternoon of December 3, 2008. That evening, the Debtors filed a "Notice of Sale Closing" in which they stated that the sales had closed just prior to the filing of that notice, and a Motion to Dismiss the appeal as moot.[5] This Panel held a hearing on the motion to stay on December 4, 2008, and entered an order denying the motion on December 5, 2008.

## IV. DISCUSSION

The Debtors assert that the Committee's appeal is moot pursuant to 11 U.S.C. § 363(m) because the sale has been consummated and there is no allegation that Five Star was not a good faith purchaser. The Committee argues that it is not moot because § 363(m) does not apply to authorizations of the sale of the co-owners' interest under § 363(h).

Section 363, as enacted in 1978, continued what had long been a primary function of bankruptcy proceedings, i.e., efficient liquidation of estate assets for the benefit of creditors. The dynamics of bankruptcy cases are in some ways ever changing, but certain truisms remain. There will always be interested parties who will try to augment their positions by delaying tactics. As adopted in 1978, § 363 strikes a balance between protection of the legitimate interests of non-debtor parties in property in which the estate has a saleable interest and the rights of other claim holders in the bankruptcy case. Sections 363(h) and (i) codify the right of the trustee,[6] proceeding from the debtor's position as one joint tenant or tenant in common, to cause the liquidation of jointly held property, when partition has been shown to be impracticable and when the right of first purchase of non-debtor joint tenants or tenants in common will not be exercised. As discussed more fully below, with respect to tenants in common, which is all that is before this panel, §§ 363(h) and (i) capture the majority view of the respective rights of tenants in common under state law. The drafters of

---

[4] The Committee did not file a request for stay with the Bankruptcy Appellate Panel in the appeals from the orders granting summary judgment in the adversary proceedings.

[5] The Debtors have not filed a motion to dismiss in the appeals from the order granting summary judgment in the adversary proceedings.

[6] In chapter 11 cases, the debtors in possession are recognized to have the same operational right as trustees.

§ 363 recognized that value of estate assets can only be achieved in an environment in which good faith purchasers can operate without undue fear of being taken hostage. *See Weingarten Nostat, Inc. v. Serv. Mech. Co., Inc.*, 396 F.3d 737, 741-42 (6th Cir. 2005) (finding that § 363(m) "encourage[s] participation in bankruptcy asset sales and increase[s] the value of property of the estate by protecting good faith purchasers from modification by an appeals court of the bargain struck with the debtor"). Finally, the drafters of § 363 fully understood that it must serve as a tool in dealing with the respective rights of all parties in the estate, in general, and in specific property that is property of the estate.

With this as background, we undertake the requested analysis of the interaction of § 363(h) and § 363(m). Although § 363(h) and § 363(m) have been a part of the Bankruptcy Code since the effective date of the Bankruptcy Reform Act of 1978 (the "Code"), it appears that this is the first appellate court asked to address the interaction of these two subsections. Perhaps this reflects the fact that neither of these subsections broke with existing common law principles. Rather, both sections codified well established common law concepts.

Section 363(h)[7] codifies the common law right of a tenant in common to seek partition by sale under certain limited circumstances. The ability of a co-owner to force the sale of the property is one of the risks of ownership by tenancy in common. Tenancy in common is a form of concurrent ownership that allows more than one owner to hold an interest in the same property. They own separate undivided shares of the whole estate. This means that, subject only to the concurrent rights of the co-owners, each tenant in common has an equal right to possess and use the whole property. *See Avner D. Sofer, Joint Authorship: An Uncomfortable Fit with Tenancy in Common,* 19 LOY. L.A. ENT. L. REV. 1 (1998).

At common law, each tenant in common had the unconditional and absolute right to seek an equitable action for partition. *See Id.* at 7. Although courts prefer to partition in kind, in

_____

[7] Section 363(h) provides, in pertinent part:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common . . . .

11 U.S.C. § 363(h).

circumstances where the physical characteristics of the property would make the partition in kind extremely unfair to one or more of the parties, courts would authorize a partition by sale and distribute the proceeds in a manner consistent with the rights in the property. *See Id.*; *Brewer v. Middleton,* 64 F.3d 662, 1995 WL 496718, \*2 (6th Cir. 1995) (unpublished table decision) ("Though physical division of jointly held property is the preferred method of partition, a court 'may also order sale and division of the proceeds when it concludes that an equitable physical division cannot be achieved.'" (citations omitted)); *see also Calumet Farm, Inc. v. Black Chip Stables (In re Calumet Farm, Inc.)*, 150 B.R. 664, 674 (Bankr. E.D. Ky. 1992) (finding that partition in kind of a stallion among the estate and the co-owners was impracticable and essentially granting partition by sale pursuant to 363(h)).

Similarly § 363(m)[8] is simply a codification of the treatment of appeals when the appellant either has not sought a stay or has been unsuccessful in such effort. *See Suter v. Goedert*, 504 F.3d 982, 986 (9th Cir. 2007); *Steinbrecher v. Steinbrecher*, 759 N.E.2d 509 (Ill. 2001) (finding appeal from an order authorizing partition by public sale became moot when the defendant failed to perfect a stay of the judgment pending appeal). The enactment of § 363(m) was never intended to limit that preexisting principle; rather, it is broader. *See, e.g., Weingarten*, 396 F.3d at 742 ("Though reflective of the general prohibition against advisory opinions undergirding the constitutional mootness doctrine, bankruptcy mootness under § 363(m) is broader. Even if the appeal is not moot as a constitutional matter because a court could provide a remedy, the policy favoring finality in bankruptcy sales reflected in § 363(m) requires that certain appeals nonetheless be treated as moot absent a stay.").

---

[8]Section 363(m), which sometimes is referred to as "statutory" mootness, provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); *see Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc.*, 396 F.3d 737. Pursuant to § 363(m), an appeal is moot when the appellant has failed to obtain a stay from the order that authorized the sale at issue, and limits the appellate court's review of a consummated sale regardless of the merits of any legal arguments raised against it. *Parker v. Goodman (In re Parker)*, 499 F.3d 616, 620-21 (6th Cir. 2007).

The bankruptcy court in this case considered approval of the sale under both subsections (b) and (h), and the sale could not have been consummated without approval of the sale of the interests of the non-debtor co-owners under subsection (h). The bankruptcy court's consideration of the sale and the motions for summary judgment on the adversary proceedings seeking authority to sell the non-debtors' interest under subsection (h) is clear from the Sale Order which both approved the sale under § 363(b) *and* found that the Debtors satisfied the requirements of § 363(h). (Debtors' Motion to Dismiss at 21 and 24.) Moreover, the sale of the non-debtors' interest was a central element of the purchase which cannot be challenged without challenging the validity of the sale. *See*, *Anheuser-Bush, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845 (1st Cir. 1990). In fact, the sales contract gave the purchaser the unilateral right to terminate the agreement if an order approving a sale under § 363(h) was not entered. (Bankr. Ct. Docket #328, Ex. A at 19).

In *Stadium*, the First Circuit Court of Appeals addressed a similar attempt to limit the application of § 363(m) only to a sale motion, notwithstanding that the sale motion was premised on obtaining relief under other Code sections. The owner of the home playing field of the New England Patriots football team, Stadium Management Corporation ("Stadium"), filed a petition under chapter 11. A chapter 11 trustee was appointed and he sought to sell Stadium's assets, including the playing field, pursuant to § 363(b). In addition to a sale motion, the trustee filed multiple ancillary motions, including one for approval of assumption and assignment of the Patriots' sublease to the new purchaser pursuant to § 365. The bankruptcy court granted the motions and the district court affirmed. While several parties objected to the motions, no stay of the sale was obtained, and the sale was completed, including the assumption of the sublease.

While acknowledging that the sale could not be reversed, the Patriots sought to reverse the bankruptcy court's order granting the motion to assign their sublease. The team argued that the appeal was not moot pursuant to § 363(m) because they were not attempting to undo the sale, but rather only the assignment of the sublease which was authorized under § 365, not § 363(b). *Id*. at 847-49.

Section 363(m) does not explicitly extend to assignment of leases under § 365. *Weingarten*, 396 F.3d at 742. However, the First Circuit Court of Appeals rejected the Patriots' attempt to "squeeze around the direct bar [of § 363(m)] by distinguishing the sale motion from the related

motions," and held that the appeal was moot. *Stadium*, 895 F.2d at 848. Because the sale motion and related motions were "considered together and remain a package," the court did not accept the Patriots' "solution." *Id*. The new purchaser had conditioned its purchase, at least in part, on the bankruptcy court's approval of the assignment of the sublease, and therefore, without a determination on the related motions, the new purchaser likely would not have proceeded with the sale. *Id*. "The assignment of the sublease was integral to the sale and removing it from the sale would have adversely affected the terms of the sale." *Id*. at 849. Finally, the First Circuit held that the Patriots' arguments implicated the policies of finality and protection of good faith purchasers that underlie § 363(m) because "'one cannot challenge a central element of a purchase . . . without challenging the validity of the sale itself.'" *Id*. (quoting *Cargill, Inc. v. Charter Int'l Oil Co. (In re the Charter Co.*), 829 F.2d 1054, 1056 (11th Cir. 1987) (per curium), *cert. denied*, 485 U.S. 1014, 108 S. Ct. 1488 (1988)).

In addition, the Sixth Circuit has not interpreted § 363(m) in the narrow manner which the Committee would have it be interpreted by us. For example, like the First Circuit Court of Appeals in *Stadium*, the Sixth Circuit has applied § 363(m) to the assignment of a lease under § 365 despite the fact that § 363(m) does not explicitly extend to the assignment of a lease under § 365. *Weingarten*, 396 F.3d at 742. Additionally, despite the fact that § 363(m) refers to transactions under § 363(b) and (c) undertaken *only* by the trustee, the Sixth Circuit has held that subsection (m) applies *whenever* a party fails to obtain a stay from an order permitting the sale of a debtor's assets and it is *not* limited to conveyances by trustees. *225 Park Plaza Assocs. Ltd. P'ship v. Connecticut Gen. Life Ins. Co. (In re 225 Park Plaza Assocs. Ltd. P'ship)*, 100 F.3d 1214, 1217 (6th Cir. 1996).

Applying § 363(m) to a sale which was authorized under § 363(b) and further authorized under § 363(h) promotes the strong preference for safeguarding the finality of bankruptcy sales, *Weingarten*, 396 F.3d at 741 ("[Section 363(m) reflects] the salutary policy of affording finality to judgments approving sales in bankruptcy . . . ."); *Hazelbaker v. Hope Gas, Inc. (In re Rare Earth Minerals)*, 445 F.3d 359, 363 (4th Cir. 2006) ("Section 363(m) codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved."), a preference that is similar to state courts' recognition that good faith purchasers at court-ordered sales must receive finality or the price obtained at such sales will be depressed. *See Steinbrecher*, 759 N.E.2d at 518. Exceptions to the application of § 363(m) "must not be construed in such a way to

undermine § 363's role in protecting the finality of a sale in bankruptcy." *Parker*, 499 F.3d at 626. To provide for an exception to statutory mootness where a portion of the overall sale required authorization under § 363(h) would "undermine § 363's role in protecting the finality of a sale in bankruptcy."

The bankruptcy court here authorized the sale of the Properties under § 363(b), including the non-debtor co-owners' interest which was authorized specifically under § 363(h). Although it attempted to obtain a stay, albeit without offering any supersedeas bond, the Committee did not obtain a stay of the Sale Order and the sale has been consummated.[9] The sale of the non-debtor co-owners' interest was a central element of the sale and without it, the sale likely would not have taken place. The sale of their interests cannot be challenged without challenging the validity of the entire sale. This is particularly true where, as here, the co-owners' interests are subordinate to the interests of the lender who is the primary beneficiary of the sale. Therefore, § 363(m) moots the Committee's appeal.[10]

The Committee urges us to narrowly interpret § 363(m) and apply its "plain meaning" to find that its appeal is not statutorily moot. It argues that:

> Section 363(m) is directed only to sales under § 363(b) or § 363(c). *A sale under § 363(h), which provides for the sale of a non-debtor co-owner's interest in property, is not a sale under § 363(b) or § 363(c)....* The modifying phrase "under subsection (b) or (c) of this section" [in § 363(h)] modifies the word "interest," not the phrase that follows .... This interpretation is consistent with the plain meaning of §§ 363(b) and (c), both of which concern sales of estate property, rather than sales of non-debtor property.

---

[9] The Committee attempts to make an issue of the apparent fact that the deeds to the property at issue were not recorded at the time of the December 4, 2008 hearing on the motion to stay, but rather on December 5, 2008 and after. Because the sale has been consummated and all of the deeds have been recorded now, this is irrelevant.

[10] Although the Debtors do not assert that the Committee's appeal is equitably or constitutionally moot, the Committee addresses equitable and constitutional mootness in its response to the Debtors' motion to dismiss. Having concluded, however, that the appeal is statutorily moot, we need not reach the issues of equitable or constitutional mootness. *Merriweather v. Official Committee of Unsecured Creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.)*, 414 F.3d 576, 583 (6th Cir. 2005).

Committee's objection to motion to dismiss at 11. (Emphasis in original.) In an attempt to support its "plain language" argument, the Committee cites to a case decided by the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals, *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (B.A.P. 9th Cir. 2008).

*Clear Channel* was a "single asset real estate" chapter 11 case in which the bankruptcy court approved a sale of estate property under § 363(b) on a credit bid submitted by a senior lienholder. The bankruptcy court also approved the sale free and clear of a junior lien pursuant to § 363(f). The junior lienholder appealed, but did not obtain a stay of the sale. The parties argued that the junior lienholder's appeal was moot pursuant to § 363(m) as a result of its failure to obtain a stay of the sale. The Panel held that § 363(m) applies only to protect the portion of sale orders issued under § 363(b) or (c), but not to the "free and clear" relief under § 363(f).

We conclude that *Clear Channel* does not support the Committee's position for two reasons. First, *Clear Channel* cited no case law for its conclusion and the overwhelming weight of authority disagrees with its holding that the § 363(m) stay does not apply to the "free and clear" aspect of a sale under § 363(f). *See, e.g.*, *Canzano v. Ragosa (In re Colarusso)*, 382 F.3d 51, 61-62 (1st Cir. 2004); *Wintz v. Am. Freightways, Inc. (In re Wintz Co.)*, 230 B.R. 840, 844-45 (B.A.P. 8th Cir. 1999); *Whatley Ranch Joint Venture, LTD v. Whatley (In re Whatley)*, 169 B.R. 698, 701 (D. Colo. 1994); *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 311 n.1 (N.D. Ill. 1988); *Int'l Union v. Morse Tool, Inc.*, 85 B.R. 666, 668 (D. Mass. 1988); *Apex Oil Co. v. Vanguard Oil & Serv. Co., Inc. (In re Vanguard Oil & Serv. Co.)*, 88 B.R. 576, 579-80 (E.D.N.Y. 1988); *Key Bank N.A. v. IRS (In re Lake Placid Co.)*, 78 B.R. 131, 135 n.1 (W.D. Va. 1987); *Hicks v. Pearlstein (In re Magwood)*, 785 F.2d 1077, 1080-81 (D.C. Cir. 1986). Perhaps more significantly, in a case that *Clear Channel* ignored, the Ninth Circuit had previously applied § 363(m) to a free and clear sale under § 363(f). *In re Robert L. Helms Const. & Dev. Co., Inc.*, 110 F.3d 1470, 1475 (9th Cir. 1997), vacated as to one of the consolidated appeals on other grounds, *In re Robert L. Helms Const. & Dev. Co., Inc.,* 139 F.3d 702, 704 n.2 (9th Cir. 1998). Accordingly, *Clear Channel* appears to be an aberration in well-settled bankruptcy jurisprudence applying § 363(m) to the "free and clear" aspect of a sale under § 363(f).

Second, *Clear Channel* is distinguishable. The Panel in that case assumed that relief under § 363(f) is a "term" of a sale as opposed to an "essential attribute" of the "validity" of a sale.

However, the present case involves a sale under § 363(h), not § 363(f). Certainly, an essential attribute of a trustee's sale of property held by tenants in common is the trustee's ability to sell both the debtor's interest and the co-owners' interest, as here, in appropriate circumstances. Therefore, although § 363(m) does not explicitly refer to a sale authorized under subsection (h), it nevertheless applies because the authority for such a sale is derived from subsection (b). If no stay from the sale order is obtained, and the sale has closed, the appeal from the sale order is moot pursuant to § 363(m). To hold otherwise would be contrary to the long-standing and well-established principle that the protection of § 363(m) is necessary to promote the finality of bankruptcy sales and would jeopardize the finality of any sale in which a non-debtor co-owner's interest is involved.

## V. CONCLUSION

For the foregoing reasons, the appeal is DISMISSED as moot.